UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:10-CR-53-ART-3 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| JOHNNY DALE MARCUM, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Before the Court is a motion to suppress filed by Defendant Johnny Dale Marcum. (D.E. 42). This motion was referred to the undersigned for a recommended disposition. (D.E. 19-1). On February 4, 2011, the Court conducted an evidentiary hearing and heard arguments on Defendant's motion. As described below, having reviewed the briefs and arguments submitted by counsel, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion.

## I. BACKGROUND

At the evidentiary hearing, the Court heard from Emby Coy Wilson, Jr., an officer employed by the Corbin Police Department, who performed a warrantless search of a Pontiac Bonneville that Defendant was driving on November 5, 2009. (D.E. 51 at 10:19-25). According to the United States, events related to a methamphetamine investigation

that Officer Wilson conducted the night before were relevant his search of the Bonneville.

Officer Wilson testified that, on November 4, 2009, he received information that co-Defendant Oba Layton Champlin was manufacturing methamphetamine and that Champlin was supposed to have some "stuff" in his vehicle. (*Id.* at 11:11-15). Officer Wilson was provided with a location to meet Champlin. (*Id.* at 11:16-17). When Officer Wilson arrived at that location, an individual in a Pontiac Grand Prix drove away and led Officer Wilson on a high-speed pursuit. (*Id.* at 11:17-18). The individual driving the Grand Prix was able to escape after the emergency equipment on Officer Wilson's vehicle malfunctioned; however, the Grand Prix was found abandoned approximately 30 minutes later. (*Id.* at 11:18-23). In the Grand Prix, Officer Wilson found lithium batteries, methamphetamine, and Sudafed. (*Id.* at 11:24-12:4). Based upon Officer Wilson's training and experience,[1] the Sudafed and lithium batteries were indicative of the manufacture of methamphetamine. (*Id.*). Officer Wilson checked the registration tags affixed to the Grand Prix and determined that the car was registered to Brenda Alsip, Champlin's mother. (*Id.* at 12:10-17). That same night, Officer Wilson went to Alsip's home looking for Champlin. (*Id.*). When he arrived, he saw a Pontiac Bonneville parked outside. (*Id.*). Officer Wilson checked the registration tags on the Bonneville and confirmed that the car was also registered in Alsip's name. (*Id.*).

---

[1] Officer Wilson testified that he has experience with methamphetamine laboratories and, therefore, is familiar with the items one would typically find in a methamphetamine lab. (D.E. 51 at 24:24-25:5).

The next day, the Corbin Police Department received a call from the local Kroger grocery store reporting a shoplifting. (*Id.* at 13:6-18). Officer Wilson reported to the store to investigate. (*Id.*). When he arrived in the Kroger parking lot, Officer Wilson observed the same Bonneville that was in front of Brenda Alsip's home the prior evening. (*Id.* at 14:21-15:7). By the time Officer Wilson and the other officers accompanying him entered the store, Kroger's loss prevention employee had already detained Defendant, the alleged shoplifter, and secured possession of the items that Defendant had reportedly taken from the store. (*Id.* at 13:21-23, 19:21-20:1). Defendant had in his possession sandwich bags, a funnel, and a Tupperware container—all items that Officer Wilson believed, based upon his training and experience, could be used to manufacture methamphetamine. (*Id.*). Officer Wilson subsequently searched Defendant's person. (*Id.* at 13:24-14:5). On Defendant's person, Officer Wilson found a cigarette pack which contained a piece of folded aluminum foil between the cigarette pack and the fold. (*Id.*). On the foil, Officer Wilson discovered what he believed to be some type of methamphetamine or other type of drug. (*Id.*). Officer Wilson did not perform a field test of the substance found on the foil; rather, he sent it to the Kentucky State Police Lab for testing. (*Id.* at 21:22-22:2). Defendant was then placed under arrest for shoplifting. (*Id.* at 23:20-22).

When exiting the store, Officer Wilson asked Defendant to identify which car he drove to the store. Defendant had the keys to the Bonneville that Officer Wilson observed in the parking lot when he arrived at the Kroger store. (*Id.* at 14:19-15:7). It is Officer Wilson's practice to search the vehicle of all suspected shoplifters that are

3

arrested to "make sure there [is] no other evidence of stolen property inside." (*Id.* at 15:15-16:9). Before searching the Bonneville, Officer Wilson observed a green backpack sitting in the backseat on the passenger side of the vehicle and plastic Wal-Mart shopping bags in the back of the vehicle. (*Id.*). Officer Wilson subsequently searched the Bonneville. (*Id.*). In the Wal-Mart bags Officer Wilson found "an air line, an air hose for an aquarium air line, with a receipt . . . , two funnels; Ziploc bags; starting fluid, four cans; and coffee filters." (*Id.* at 17:1-4). In the backpack, Officer Wilson found "two funnels, two packs of coffee filters, a one-gallon plastic container, two pairs of locking pliers, five pairs of regular pliers[,] [o]ne small electrical food processor with white residue inside[,] [o]ne four-pound box of Morton salt[,] [o]ne plastic . . . clothes hang[e]r, . . . [t]wo four-packs of Energizer lithium batteries[,] [e]ight plastic containers[,] [t]wo rolls of black electrical tape[,] [and] [o]ne piece of quarter-inch hose connected to a green lid with black electrical tape holding it together." (*Id.* at 17:5-13). Elsewhere in the car, Officer Wilson "found the four cans of starter fluid and two cans of Prestone starter fluid . . . [a]nd also found several pseudoephedrine pills in the console of the car." (*Id.* at 17:16-28).

Defendant also testified at the evidentiary hearing. He stated that, at the time of his arrest, Brenda Alsip was his girlfriend and that he was living with her. (*Id.* at 27:11-14). He also stated that the Bonneville that he drove to Kroger on November 5, 2009, was registered in Brenda Alsip's name, but that it was actually owned by Brenda Alsip's mother. (*Id.* at 27:20-23). Furthermore, Defendant testified that he drove the Bonneville on a regular basis and that he did so with permission. (*Id.* at 27:24-28:3). However,

4

because Defendant had taken Xanax on the day he was arrested, he testified that he was unable to recall the events that occurred while he was in the store. (*Id.* at 29:6-13).

## II. DISCUSSION

Defendant has moved to suppress the evidence that was discovered as a result of Officer Wilson's search of the Bonneville. Defendant argues that the search violated his Fourth Amendment rights. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend IV.

### A. Automobile Exception

Generally speaking, a search is only reasonable under the Fourth Amendment if it is "conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney*, 471 U.S. 386, 390 (1985). However, one exception to the warrant requirement—the so called "automobile exception"—permits a warrantless search of an automobile if there is "probable cause to believe that instrumentalities or evidence of crime may be found in the vehicle to be searched."[2] *United States v. Graham*, 275 F.3d 490, 509 (6th Cir. 2001). There is "no requirement of exigent circumstances to justify

---

[2] Another exception to the warrant requirement is the search-incident-to-arrest exception. *Arizona v. Gant*, 556 U.S. ----, 129 S. Ct. 1710, 1714 (2009) (citing *Chimel v. California*, 395 U.S. 752, 763 (1969)). In the automobile context, "[p]olice may search a vehicle incident to a recent occupant's arrest . . . if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 1723. Although Defendant argued that this exception does not apply because Defendant was not within reaching distance of the passenger compartment of the Bonneville at the time it was searched (D.E. 42 at 3), the United States has since conceded that it does not rely upon the search-incident-to-arrest exception "in light of the geographical . . . non-proximity, by their description, of the defendant to the vehicle." (D.E. 51 at 31:10-14). In light of this concession, the Court does not address whether the search was valid under this particular exception.

such a warrantless search." *United States v. Johns*, 469 U.S. 478, 484 (1985). Furthermore, if police have probable cause to search a vehicle, "they may conduct a warrantless search of any containers found inside that may conceal the object of the search." *Id.* at 479-80 (citing *United States v. Ross*, 456 U.S. 798 (1982)).

The Sixth Circuit has "defined probable cause as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *Graham*, 275 F.3d at 509 (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)). Determining whether probable cause existed at the time of the search is a "'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" *Smith v. Thornburg*, 136 F.3d 1070, 1074-75 (6th Cir. 1998) (quoting *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994)). When assessing whether probable cause existed, the Court "may not look to events that occurred after the search or to the subjective intent of the officers;" rather, the Court must only "look to the objective facts known to the officers at the time of the search." *Id.* at 1075.

### B. Probable Cause

The facts known to Officer Wilson at the time that he conducted the search, as discussed above, are not disputed. Thus, the only question the Court must answer is whether those facts known to Officer Wilson supported probable cause to search the Bonneville being driven by Defendant. For the reasons set forth below, they did.

The parties dispute whether any single fact known to Officer Wilson would alone have supported probable cause to search the Bonneville. The Court need not resolve that dispute, for under the totality of the circumstances, Officer Wilson was permitted to

6

search the vehicle. When Officer Wilson searched the Bonneville he was aware that the vehicle was registered to Brenda Alsip, as was the Grand Prix involved in the high-speed pursuit with the Corbin Police Department the night before. Furthermore, an informant advised Officer Wilson that the driver of the Grand Prix, Oba Layton Champlin, was manufacturing methamphetamine. In fact, a search of the Grand Prix turned up methamphetamine and other supplies used to manufacture the drug. The very next day, Officer Wilson was again confronted with another vehicle, the Bonneville, registered in the name of Brenda Alsip and seen by Officer Wilson at her residence the night before. Defendant, who had driven the Bonneville to the Kroger grocery store had apparently shoplifted or attempted to shoplift certain equipment used to manufacture methamphetamine. Significantly, a search of Defendant's person revealed a cigarette package with folded aluminum foil containing a white residue that appeared to Officer Wilson to be methamphetamine. Confronted with these facts, Officer Wilson had reasonable grounds to believe that methamphetamine and/or equipment used to manufacture methamphetamine would be found in the Bonneville.

Defendant argues that events from the night before involving a different vehicle and a different suspect should not "bleed over into another vehicle that happened to be titled in the same person's name . . . ." (D.E. 51 at 34:1-7). The Court would likely agree, but for the fact that Defendant, who was driving the Bonneville, was allegedly shoplifting equipment used to manufacture methamphetamine and had white residue that appeared to be methamphetamine on his person. With respect to the items that Defendant allegedly shoplifted, Defendant argues that there is nothing inherently illegal about those

items. (*Id.* at 35:4-7). In fact, Defendant correctly points out that sandwich bags, funnels, and Tupperware containers are items that many people would have in their home. (*Id.* at 35:11-16). However, Officer Wilson, like that of an objectively reasonable police officer, was entitled to use his commonsense in assessing the purpose for which Defendant intended to use those items. Thus, Officer Wilson was entitled to deduce that a person who was allegedly shoplifting the items, driving a vehicle registered in Brenda Alsip's name, and possessing suspected methamphetamine residue on his person, may have intended to use the shoplifted items for manufacturing methamphetamine or related offenses. Finally, Defendant argues that the Corbin Police Department's policy of searching the vehicle of every shoplifter does not equate to probable cause. (*Id.* at 34:14-18). In other words, Defendant contends that the Corbin Police Department should not be able to search the vehicle of every suspected shoplifter as a matter of course.[3] (*Id.* at 34:19-35:3). However, Defendant does recognize, as he must, that "there may be facts that would justify [the police] conducting a search of [an alleged shoplifter's] vehicle." (*Id.* at 34:19-20). And here, Officer Wilson was aware of facts, in addition to those related to the shoplifting, which were sufficient to support probable cause to believe that the Bonneville contained methamphetamine or equipment used to manufacture methamphetamine. Therefore, the warrantless search of the Bonneville was permissible under the Fourth Amendment.

---

[3] By this Recommended Disposition, this Court does not necessarily countenance such a sweeping policy.

## III. RECOMMENDATION

For these reasons discussed herein, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion to suppress (D.E. 42).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. As defined by § 636(b)(1) and Federal Rule of Criminal Procedure 59(b), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for de novo consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 59(b) waives a party's right to review.

This the 4th day of March, 2011.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge