UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | No. 6:10-CR-53-KKC-3 |
| v. | ) | RECOMMENDED DISPOSITION |
| JOHNNY DALE MARCUM, | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Caldwell (D.E. 307), the Court considers reported violations of supervised release conditions by Defendant Johnny Dale Marcum.

District Judge Thapar entered a judgment against Defendant in February 2012 after he pleaded guilty to one count of conspiracy to manufacture methamphetamine (21 U.S.C. §§ 841(a)(1), 846). D.E. 186. He was sentenced to 150 months of imprisonment and three years of supervised release. *Id*. at 2-3. Defendant was released from custody on June 17, 2021.

In July 2021, the United States Probation Office ("USPO") requested a condition-modification requiring Defendant to submit to weekly drug testing for two months. D.E. 304. According to that "12B" report,

> On June 25, 2021, the defendant began receiving buprenorphine through a medication-assisted treatment program at Family Practice of Kentucky in Manchester, Kentucky. A recent review of drug testing results submitted through the program revealed positive test results for methamphetamine and alcohol. The samples were collected on June 25, 2021, and July 1, 2021. The defendant denies the use of alcohol and indicates the methamphetamine positives were due to one unintentional use.
>
> The defendant has submitted five urine samples for testing at the United States Probation Office since his release, all of which have been negative for methamphetamine and alcohol. A urine sample submitted on June 23, 2021,

returned positive results for buprenorphine. The defendant indicates this was due to daily illegal use of buprenorphine while in Bureau of Prisons custody.

The USPO also reported that Defendant was "attending weekly substance abuse treatment and has secured full-time employment." *Id.* Judge Caldwell approved the modification. *Id.*

**I.**

On August 30, 2021, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges three violations. According to the Report,

> On August 20, 2021, the defendant called this officer and indicated he tested positive for COVID-19. The defendant stated he was unable to get a paper copy of the results until the following Monday. This officer instructed the defendant to provide documentation of the positive COVID-19 test on Monday, August 23, 2021. The defendant failed to provide documentation. This officer has made several attempts via telephone to reach the defendant since August 23, 2021, all of which have been unsuccessful. On August 25, 2021, this officer unsuccessfully attempted to contact the defendant at his home. Contact has also been made with the defendant's girlfriend, Debbie Rutherford, with whom he resides. She indicates she has had no contact with the defendant since August 24, 2021, and is unaware of his whereabouts.
>
> The defendant failed to attend scheduled substance abuse treatment with Bouncing Back Counseling in Manchester, Kentucky, on August 25, 2021, and August 27, 2021.

Violation #1 alleges a violation of the condition that requires Defendant to follow the instructions of his probation officer. This Grade C violation is based on Defendant's failure to provide written documentation of his positive COVID-19 test results, as instructed.

Violation #2 alleges a Grade C violation of the weekly-drug-testing condition. According to the Report, Defendant "failed to submit a drug test for the week of August 23, through August 27, 2021." And his "whereabouts are currently unknown."

Violation #3 alleges a Grade C violation of the condition that requires Defendant to participate in substance abuse treatment at the direction of Probation. This violation is based on Defendant's failure to attend treatment on August 25, 2021, and August 27, 2021.

The Court conducted an initial appearance pursuant to Rule 32.1 on September 9, 2021, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 310. At the initial appearance, the United States made an oral motion for interim detention; Defendant argued for release. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

Because Defendant had alleged ineffective assistance of counsel in his 2014 post-conviction motion (*see* D.E. 198), the Court appointed new counsel (D.E. 311) and conducted an interim status conference (D.E. 313).

On September 21, 2021, the Court conducted a final hearing on the violation allegations. D.E. 314. Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report and the United States thus established all three violations under the standard of § 3583(e).

## II.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment (including the sentencing transcript). Additionally, the Court has considered all the 18 U.S.C. § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's underlying conviction is a Class C felony. This results in a two-year maximum period of incarceration upon revocation pursuant to § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under Section 7B1.1, Defendant's admitted conduct qualifies as Grade C for all three violations. Given Defendant's criminal history category of VI (the category at the time of the conviction) and Grade C violations, Defendant's range, under the Revocation Table of Chapter Seven, is eight to fourteen months. U.S.S.G. § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction for a conspiracy to manufacture methamphetamine does not carry a maximum term of supervised release. 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(A)(viii).

### III.

At the final hearing, the defense focused on the possibility of inpatient treatment in lieu of imprisonment. Under 18 U.S.C. § 3583(d), the court "shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception" from subsection (g)'s provision that requires mandatory revocation and imprisonment when the defendant refused to comply with

drug testing imposed as a condition of supervised release.  *See also United States v. Crace*, 207 F.3d 833, 836-37 (6th Cir. 2000).

The defense said it hoped to have called a witness, John Alexander, who works at Lake Cumberland Recovery, Inc., a full-service inpatient drug treatment provider that now has a location in Somerset.  The defense proffered that Mr. Alexander says Defendant can obtain a bed there and undergo inpatient treatment for as long as twelve months.

The defense then argued for twelve months of inpatient treatment in lieu of imprisonment.  Under the defense's scenario, if Defendant were to complete the treatment successfully, there would be no prison time.  But if he failed to complete treatment, he would be automatically subject to a term of imprisonment (within the Guidelines Range, to be determined by the Court) and serve that entire imprisonment term, regardless of how long he had been in treatment.  That way, the imprisonment sentence would be hanging over Defendant's head and serve as an incentive to cooperate with treatment.  The defense's argument was that Defendant's extensive criminal history is driven by his drug addiction, yet Defendant, who is almost 61 years old, has never received intensive effective drug treatment.

On the topic of sending Defendant straight to inpatient treatment, the government noted that there have been other revocation cases where the final hearing was continued pending Defendant's completion of inpatient treatment.  The idea is that the sentence can be crafted in light of Defendant's level of success in inpatient treatment.  The government did note that it was not aware of this being done and the defendant successfully completing the full inpatient program.  The defense said it was fine with this approach and said Defendant should expect the Court to impose the full two-year imprisonment sentence if Defendant fails to complete treatment.

The defense called Defendant as a witness on his own behalf, and Defendant spoke from counsel table. Defendant said he had been incarcerated over a period of 36 years, and all his crimes were "because of drug use." But even in prison, he cannot remember a day when drugs were not present. Defendant was not able to do the full RDAP program; nor had he undergone to shorter 40-hour RDAP program. He has done Suboxone treatment (which is treatment for opioid addiction, not meth), but Suboxone was "just another drug." Defendant said because of his drug problems he has lost all his family.

The Court asked Defendant about his promise to Judge Thapar at sentencing: "I'm 51 years old. I don't know how or why I can say this, but I know that I'll never, ever do a drug again." D.E 190 at 20. Defendant said he was sincere at the time, but he did not fully appreciate the power of addiction. Now he knows and acknowledges he is an addict. He says he hopes treatment will help him understand what is wrong with him so he can change.

Defendant explained that after he was released in June he went "straight to" a Suboxone clinic. He said he had used drugs in prison on the day he was released. He said that both meth positives reported by Probation (D.E. 304) were from that single use. Concerning his outpatient treatment with Bouncing Back, Defendant said he never had an in-person session with anyone; it was all done over the phone from home.

The government argued for revocation with nine months of imprisonment, plus a new three-year term of supervision upon release. According to the government, the circumstances require jail time. The breach of trust was significant here. Defendant tested positive for meth soon after his release. This positive result could have resulted in revocation with a Grade B violation. Instead, the Court gave Defendant a break by imposing two months of weekly drug testing instead of initiating revocation proceedings. But a month later, Defendant violated that

new condition, missed two outpatient treatment appointments, and was uncooperative with his probation officer. The government argued that Defendant's missed treatment appointments undermined his argument that he was serious about overcoming addiction. The government argued that, because Defendant's modification was based on meth use, his misbehavior on release is tethered to the underlying conviction for involvement in meth production. According to the government, Defendant's very serious criminal history, including multiple prior release revocations in state matters, enhances the need to protect the public and deter criminal conduct. The government made clear that despite its insistence on incarceration it has no objection to using inpatient treatment or a halfway house upon release.

The defense argued that, while putting Defendant back in prison was the "easy" way to deal with him, Defendant has never been given the tools to succeed, meaning intensive addiction treatment. Defense counsel had never encountered a drug-crime defendant this old who had never done rehab. The defense argued Defendant would either get rehab or die; no amount of prison time will change Defendant's status as an addict.

The Court asked about the PSR's references to prior treatment in state prison and Defendant's inpatient treatment with Crossroads in the 1980s. According to the defense, the state treatment programs were "a joke" and there have been significant advancements in treatment since the 1980s. Defendant also told the Court the 1980s treatment was "really a joke."

**IV.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

As previously noted, subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. Defendant could benefit from treatment, but treatment in lieu of incarceration is not warranted here. Defendant, at 60 years of age, has had many opportunities to change and to seek help. Here, instead of being up front with his supervising officer and seeking help, he avoided his mandatory weekly drug testing and skipped out on two treatment sessions. It appears he untruthfully claimed to have COVID-19 to avoid contact with his probation officer. The Court does not recommend treatment in lieu of revocation in cases where the supervisee is not up front and honest about his need for help.

In crafting a penalty, the Court must consider the nature and circumstances of Defendant's underlying conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was a "smurf" who obtained pseudoephedrine and other supplies for use in manufacturing methamphetamine. Eleven years later, Defendant continues to use meth.

The Court next considers Defendant's history and characteristics and the need for additional training or treatment. As the defense stressed, Defendant has a serious and long-term drug abuse problem. Although Defendant's dishonesty and resistance to supervision do not qualify him for treatment in lieu of imprisonment, Defendant will be evaluated for treatment again upon his release. Defendant's criminal history is terrible, and his nine previous parole revocations in particular stand out.

The Court must also consider the need to protect the public and deter future criminal conduct. Defendant's lengthy criminal history suggests he presents a continuing risk to the public that needs to be deterred.

The Guidelines suggest the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The trust breach here is significant. Defendant was shown leniency when he tested positive for meth because Probation did not seek revocation, but rather increased drug testing. But Defendant then evaded both Probation and his treatment.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends an incarceration sentence of six months. This is below the Guidelines Range of eight to fourteen months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

The below-Guidelines sentence here is based on the expectation that Defendant will likely be referred to inpatient treatment upon release. Upon release, Defendant shall be evaluated for treatment by a contracted service provider. Under his existing conditions, Defendant will be required to comply with and complete any treatment he is directed to undergo at the direction of Probation. In light of the likelihood of future treatment, the Court finds that an

imprisonment sentence of six months is sufficient, but not greater than necessary, to address the pertinent penalty factors.

As Defendant stated, he left prison with meth in his system. He was not successful upon release. It is thus appropriate to reimpose, in full, his original three-year term of supervision.

## V.

Based upon the foregoing, the Court **RECOMMENDS**:

(1) That, upon his stipulation, Defendant be found guilty of all three violations.

(2) Revocation with a term of imprisonment of six months, followed by three years of supervised release on the conditions previously imposed (D.E. 186, not including the weekly testing modification at D.E. 304). Consistent with these conditions, upon his release, Defendant should be evaluated for additional drug-addiction treatment.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **FIVE DAYS** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk.

Absent waiver, the matter will be placed on Judge Caldwell's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 22nd day of September, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge