UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | No. 6:10-CR-53-KKC-3 |
| v. | ) | RECOMMENDED DISPOSITION |
| JOHNNY DALE MARCUM, | ) | |
| Defendant. | ) | |

*** *** *** ***

On referral from District Judge Caldwell (D.E. 327), the Court considers reported violations of supervised release conditions by Defendant Johnny Dale Marcum. This is his second revocation.

## I. Background

District Judge Thapar entered a judgment against Defendant in February 2012 after he pleaded guilty to one count of conspiracy to manufacture methamphetamine (21 U.S.C. §§ 841(a)(1), 846). D.E. 186. He was sentenced to 150 months of imprisonment and three years of supervised release. *Id*. at 2-3. The case was later transferred to Judge Caldwell. Defendant was released from custody on June 17, 2021.

In July 2021, the United States Probation Office ("USPO") requested a condition-modification requiring Defendant to submit to weekly drug testing for two months. D.E. 304. According to that "12B" report,

> On June 25, 2021, the defendant began receiving buprenorphine through a medication-assisted treatment program at Family Practice of Kentucky in Manchester, Kentucky. A recent review of drug testing results submitted through the program revealed positive test results for methamphetamine and alcohol. The samples were collected on June 25, 2021, and July 1, 2021. The defendant denies

> the use of alcohol and indicates the methamphetamine positives were due to one unintentional use.
>
> The defendant has submitted five urine samples for testing at the United States Probation Office since his release, all of which have been negative for methamphetamine and alcohol. A urine sample submitted on June 23, 2021, returned positive results for buprenorphine. The defendant indicates this was due to daily illegal use of buprenorphine while in Bureau of Prisons custody.

The USPO also reported that Defendant was "attending weekly substance abuse treatment and has secured full-time employment." *Id*. Judge Caldwell approved the modification. *Id*.

On August 30, 2021, the USPO issued a report charging violations of the conditions that require Defendant to (1) follow the instructions of the Probation Officer, (2) submit to weekly drug testing, and (3) participate in substance abuse treatment at the direction of the Probation Officer. According to that report,

> On August 20, 2021, the defendant called this officer and indicated he tested positive for COVID-19. The defendant stated he was unable to get a paper copy of the results until the following Monday. This officer instructed the defendant to provide documentation of the positive COVID-19 test on Monday, August 23, 2021. The defendant failed to provide documentation. This officer has made several attempts via telephone to reach the defendant since August 23, 2021, all of which have been unsuccessful. On August 25, 2021, this officer unsuccessfully attempted to contact the defendant at his home. Contact has also been made with the defendant's girlfriend, Debbie Rutherford, with whom he resides. She indicates she has had no contact with the defendant since August 24, 2021, and is unaware of his whereabouts.
>
> The defendant failed to attend scheduled substance abuse treatment with Bouncing Back Counseling in Manchester, Kentucky, on August 25, 2021, and August 27, 2021.

Defendant stipulated to all three violations. D.E. 315. He was given a below-Guidelines revocation sentence of six months of incarceration, followed by three years of supervised release. D.E. 318. Defendant was released again on March 7, 2022.

**II.**

On December 15, 2022, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges a single Grade C violation of Standard Condition #5. That Condition states,

> You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

D.E. 318 at 4.

According to the Report,

> On December 2, 2022, this officer conducted a home visit at Marcum's last known residence[.] Upon arrival, this officer made contact with the homeowner, Paul Bishop, who was allowing Marcum to reside in the basement of his residence. Bishop advised he evicted Marcum approximately two (2) weeks prior after he caught Marcum stealing $200.00. Bishop indicated Marcum is not welcome back at his residence.
>
> Marcum has not reported a change in residence, and, as of the date of this report, he has made no contact with this officer.

The Court conducted an initial appearance pursuant to Rule 32.1 on January 6, 2023, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 330. At the initial appearance, the United States made an oral motion for interim detention. Defendant did not seek release. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

On January 17, 2023, the Court conducted a final hearing on the violation allegation. D.E. 331. Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583.

Defendant stipulated to violating Standard Condition #5, but he did not admit to the details of the allegation. Defendant did not agree that he had been evicted or that he had stolen any money. According to Defendant, he reported the change of address on his monthly report and mailed it in early December, but the Probation Office apparently never received the report. Defendant said he believed submitting the monthly report was all he needed to do regarding his change of address. He said that he decided to move into his late mother's house when given the opportunity. But he agreed his Probation Officer had not been notified within the required time frame. Defendant competently entered a knowing, voluntary, and intelligent stipulation to the violation. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violation as described in the Report and the United States thus established the violation under the standard of § 3583(e).

### III.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment (including the sentencing transcript) and the prior revocation. Additionally, the Court has considered all the 18 U.S.C. § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's underlying conviction is a Class C felony. This results in a two-year maximum period of incarceration upon revocation pursuant to § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F.

App'x 436, 438-39 (6th Cir. 2007). Under Section 7B1.1, Defendant's admitted conduct qualifies as Grade C. Given Defendant's criminal history category of VI (the category at the time of the conviction) and a Grade C violation, Defendant's range, under the Revocation Table of Chapter Seven, is eight to fourteen months. U.S.S.G. § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction for a conspiracy to manufacture methamphetamine does not carry a maximum term of supervised release. 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(A)(viii).

### IV.

At the final hearing, the parties presented a jointly recommended penalty of nine months' incarceration, followed by continuation of the existing supervision period, which is set to expire in March 2025. Defendant spoke candidly and at length to the Court. Having heard Defendant as to the explanation for the violation and his general progress on supervision, the Court recommends a penalty that is below the parties' joint recommendation and below the Guidelines Range.

Several key facts are not in dispute. First, it is not disputed that the Probation Officer was not actually informed of Defendant's change of address within the time periods specified in Standard Condition #5. Second, although Defendant has a long history of drug abuse and addiction, the parties agree there is no evidence that Defendant has used drugs during his most recent supervision period. Third, there is no dispute that, other than the unreported change of address, Defendant has been compliant with supervision, including otherwise submitting his monthly reports and attending all required treatment appointments.

The Court also wants to be clear about the scope of Defendant's stipulation to the violation. The defense challenged "the veracity of Mr. Bishop." Defendant did not admit to stealing money and he disagreed with Mr. Bishop's account of when he moved. Defendant also did not agree that he had been evicted. According to Defendant, he chose to move into his late mother's house, and there were also interpersonal conflicts concerning his living situation at the time that have since been worked out. Defendant admitted only that he did not inform his Probation Officer about his change of address within the timeframe of Standard Condition #5. He was adamant he included his change of address on his monthly report, which he mailed in early December. He assumed the report got lost in the mail, and admitted he made no other effort to alert Probation to the change of address. He said he did not understand the timing requirement. Defendant was clearly very frustrated with his situation and emphasized how well he had been complying with treatment and staying away from drugs.

Concerning the sentence, the government simply argued that a violation had occurred, and therefore a within-Guidelines revocation penalty was warranted on a second violation.

Defense counsel suggested he could have argued for a below-Guidelines sentence because the violation was a "technical," "strict-liability" violation. The defense explained, however, that this was not Defendant's "first rodeo," and Defendant could have been more careful and proactive. Defense counsel argued that keeping the existing supervision cutoff date would give Defendant a realistic incentive for achievement.

Defendant addressed the Court freely throughout the hearing. He explained that upon his release he had nowhere to go. His mother had passed away and his remaining family would not help him. They even prevented him from moving into his late mother's now-empty house. He moved in with some older people. He was helping them, and he was helping flood victims. He

kept up his meetings with his counselor and he established a relationship with his granddaughter, which is very meaningful to him. He explained that he was beating drugs and had turned down opportunities to obtain drugs. He explained that, once he was enabled to move into his mother's house, he did so. He said he thought mentioning the change of address on the monthly report would be adequate. Defendant insisted he had mailed the report in December. He explained that he continued to attend treatment even after moving and suggested he would not have done so if he was trying to evade Probation.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

In crafting a penalty, the Court must consider the nature and circumstances of Defendant's underlying conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was a "smurf" who obtained pseudoephedrine and other supplies for use in manufacturing methamphetamine. He continued using meth until eleven years later, when the last set of violations occurred. But here, there is no evidence Defendant has used illegal drugs since his last release from prison.

The Court next considers Defendant's history and characteristics and the need for additional training or treatment. Defendant's criminal history is terrible, and his nine previous parole revocations in particular stand out. More recently, Defendant has been receiving treatment while on release, and he insists it has been effective and he has stayed away from drugs.

The Court must also consider the need to protect the public and deter future criminal conduct. Defendant's lengthy criminal history suggests he presents a continuing risk to the public that needs to be deterred. However, the Probation Officer reports that Defendant has been otherwise compliant on the present term of supervision and has made great strides, particularly in avoiding drug abuse.

The Guidelines suggest the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Defendant was shown leniency in July 2021 when he tested positive for meth because Probation did not seek revocation, but rather increased drug testing. But Defendant then evaded both Probation and his treatment and his revocation was revoked in the Fall of 2021. Although the Court did not grant his request for treatment in lieu of revocation, he was given a below-Guidelines sentence of six months. That below-Guidelines sentence was "based on the expectation that Defendant will likely be referred to inpatient treatment upon release." D.E. 315 at 9. Defendant was actually referred to outpatient substance abuse counseling, but the counseling appears to have been effective. The fact that this is the second revocation (and third report of violation conduct) weighs in favor of revocation. But the fact that the violation is technical and strict-liability reduces the severity of the breach of trust.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends an incarceration sentence of six months. This is below the Guidelines Range

of eight to fourteen months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

The below-Guidelines sentence here is based on two things: the "technical" nature of the violation and the fact that Defendant was making great strides. Defendant was doing well, but he could have done more to ensure Probation was notified of his address change within the required timeframe. Given the unique situation here, the Court finds that an imprisonment sentence of six months is sufficient, but not greater than necessary, to address the pertinent penalty factors (notwithstanding the jointly recommended penalty).

## VI.

Based upon the foregoing, the Court **RECOMMENDS**:

(1) That, upon his stipulation, Defendant be found guilty the charged violation.

(2) Revocation with a term of imprisonment of six months, followed by supervised release on the conditions previously imposed (D.E. 318), to terminate on March 6, 2025.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **FIVE DAYS** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*,

by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Caldwell's docket upon submission. If Defendant chooses to waive allocation, he **SHALL** do so on or before the deadline for filing objections.

This the 18th day of January, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge